UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JOHNNA SMITH, )
 )
 Plaintiff, )
 )
v. ) No. 1:14-cv-178-SKL
 )
GROW YOGA, LLC, *et al.*, )
 )
 Defendants. )

# **MEMORANDUM AND ORDER**

Before the Court is a motion filed by Defendants Grow Yoga, LLC, Grow Yoga, LLC d/b/a Hot Yoga Plus, Hot Yoga Plus, North Shore Yoga, LLC, and North Shore Yoga, LLC d/b/a Hot Yoga Plus (collectively the "Yoga Defendants") seeking summary judgment on all claims filed against them Plaintiff Johnna Smith ("Plaintiff") [Doc. 43]. In short, the Yoga Defendants assert Plaintiff cannot prevail on her claims against them under an agency or *respondeat superior* theory as a matter of law because Defendant Kelsey Vasileff ("Defendant Vasileff") was not acting as an agent or employee of the Yoga Defendants at any relevant time. Plaintiff has filed a response in opposition to the Yoga Defendants' motion for summary judgment [Doc. 44]. The Yoga Defendants did not file a reply to the response within the time permitted, so this matter is now ripe.

For the reasons explained below, the motion for summary judgment filed by the Yoga Defendants [Doc. 43] will be **DENIED**.

**I.     STANDARD**

Summary judgment is mandatory where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law provides the frame of reference to determine which facts are material. *Anderson*, 477 U.S. at 248. A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *Jones v. Sandusky County, Ohio*, 541 F. App'x 653, 659 (6th Cir. 2013); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson*, 477 U.S. at 249. Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports*, 253 F.3d at 907. A mere scintilla of evidence is not enough to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jones*, 541 F. App'x at 659. The movant must support its assertion that a fact is not in dispute by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). If the moving party carries this burden, the opposing party must show that there is a genuine dispute by either "citing to [other] particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." *Id.* In reply, the movant may then attempt to show that the materials

cited by the nonmovant "do not establish the . . . presence of a genuine dispute." *Id.* Either party may also attempt to challenge the admissibility of its opponent's evidence. *Id.*

The court is not required to consider materials other than those specifically cited by the parties, but may do so in its discretion. *Id.* If a party fails to support its assertion of fact or to respond to the other party's assertion of fact, the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

## II. FACTUAL BACKGROUND

On June 12, 2014, Plaintiff filed her complaint in this Court against all Defendants based upon diversity of citizenship. Plaintiff seeks to recover for personal injuries sustained in an automobile accident on September 6, 2013 in which she was a passenger is a vehicle driven, owned, and operated by Defendant Vasileff. The crux of the complaint is that Defendant Vasileff was negligent in the maintenance and operation of her vehicle, and that her acts of negligence are imputed to the Yoga Defendants under an agency or *respondeat superior* theory because Defendant Vasileff was acting as an employee or an agent of the Yoga Defendants at the time the accident occurred. The Court will discuss the undisputed facts first.

### A. Undisputed Facts

The Yoga Defendants are a group of business entities involved in the operation of Hot Yoga Plus, also known as North Shore Yoga, a yoga studio located in Chattanooga, Tennessee [Doc. 1 at Page ID # 1-2, ¶¶ 2-6]. Defendant Vasileff, who resides in Tennessee, teaches yoga classes at studios in Chattanooga, Tennessee, including at Hot Yoga Plus [Doc. 1 at Page ID # 2, ¶ 7; Doc. 43-2 at Page ID # 194-95, ¶¶ 2, 4, 6; Doc. 43-3 at Page ID # 197-98]. Plaintiff, who

resides in North Carolina, is a yoga instructor with many years of experience in the yoga industry [Doc. 1 at Page ID # 1, ¶ 1; Doc. 43-1]. Plaintiff conducts yoga teacher training in a variety of locations [Doc. 43-1 at Page ID # 182-83].

1. **Plaintiff's Background**

Plaintiff originally started teaching yoga classes at OM Yoga in Fort Mill South Carolina [Doc. 43-1 at Page ID # 178]. When Plaintiff began teaching classes at that studio, Plaintiff was an independent contractor, and she signed a document which contained rules for the studio, how to turn the heat off for the night, and how to get a substitute teacher if necessary [*Id.*]. Plaintiff stated that it was her understanding that an independent contractor receives a 1099 tax form rather than a W-2 and does not receive benefits such as workers' compensation insurance, other insurance, or other benefits such as a car or cell phone [*Id.*].

Plaintiff also worked for six years at Yoga One studio in Charlotte, North Carolina [*Id.* at Page ID # 179]. Plaintiff started working for Yoga One as an employee, because she had managerial duties in addition to teaching [*Id.*]. While she was an employee of that studio, she received a W-2 form at the end of the year and had taxes withheld from her paychecks [*Id.*]. Plaintiff later became an independent contractor, when she was solely teaching and no longer had managerial responsibilities [*Id.* at Page ID # 180]. When Plaintiff became an independent contractor, she received a 1099 form instead of a W-2 and no longer had taxes withheld [*Id.*].

Plaintiff, at the time of her deposition, was teaching classes once or twice a week at the studio in South Carolina [*Id.* at Page ID # 182]. Plaintiff was also teaching classes at Y2 Yoga and Yoga Shala Charlotte [*Id.*]. Additionally, Plaintiff was conducting teacher trainings at various locations, and she had scheduled teacher trainings to take place in North Carolina and South Carolina in January 2015, in Philadelphia in March 2015, and in Mexico in March and

April 2015 [*Id.*]. Before Plaintiff would schedule a teacher training, she would agree with the studio owner regarding the percentage split of the revenue that she would receive for conducting the training [*Id.* at Page ID # 183]. If Plaintiff was not satisfied with the percentage she would receive, she would not agree to conduct the teacher training [*Id.*]. All expenses would be deducted from the total revenue of the teacher training before the money would be split according to the percentage previously agreed upon [*Id.* at Page ID # 184]. Expenses that were taken off the top of the revenue for teacher trainings included advertising, manuals, printing, websites, flights, housing, ground transportation, and sometimes food [*Id.*].

### 2. Defendant Vasileff's Background

Defendant Vasileff graduated from Notre Dame High School in Chattanooga, Tennessee in 2005 [Doc. 43-3 at Page ID # 197]. She attended some college at East Tennessee State University in Johnson City, Tennessee [*Id.*]. She also attended yoga teacher training for a month in Asheville, North Carolina, before returning to Chattanooga for work [*Id.*]. Defendant Vasileff began working at North Shore Yoga in 2008 [*Id.*]. Defendant Vasileff finished her degree at the University of Tennessee at Chattanooga [*Id.*]. When Defendant Vasileff first started working at North Shore Yoga, it was owned by Sara Mingus and Jessica Jolley [*Id.* at Page ID # 208]. Defendant Vasileff began working for the studio as a front desk worker, so she was an employee, had taxes withheld, and received a W-2 form at the end of the year [*Id.*]. After a year working at the front desk, Defendant Vasileff became a teacher and understood she was therefore no longer considered an employee, but was classified as an independent contractor [*Id.*]. Defendant Vasileff no longer had her taxes withheld once she stopped working at the front desk to become a teacher [*Id.*].

Defendant Vasileff taught yoga classes at North Shore Yoga for two to three years before a new owner, Susannah Herring, purchased the studio and renamed it Hot Yoga Plus [*Id.* at Page ID # 197, 209]. Defendant Vasileff has continued teaching yoga classes at Hot Yoga Plus since then [*Id.*]. She could have chosen not to stay on as a teacher at Hot Yoga Plus if she had wanted to leave [*Id.* at Page ID # 209]. Defendant Vasileff has not had any taxes withheld from her pay at Hot Yoga Plus, and she is paid $45 for each class that she teaches [*Id.*]. Hot Yoga Plus did not provide Defendant Vasileff with any vacation time, sick days, workers' compensation insurance, health insurance, a cell phone, or an automobile [*Id.* at Page ID # 211]. Hot Yoga Plus and its owner, Ms. Herring, never told Defendant Vasileff to have the car that Defendant Vasileff owned worked on, or that it needed new tires or new brakes [*Id.*]. Defendant Vasileff never discussed her car's maintenance with Hot Yoga Plus or Ms. Herring [*Id.*]. Defendant Vasileff said that her car's use and maintenance was none of their business [*Id.*].

Hot Yoga Plus did require Defendant Vasileff to establish a connection with the clients, by smiling and making an effort to learn about the students and using their names during classes [Doc. 44-2 at Page ID # 296-97]. Hot Yoga Plus also required Defendant Vasileff to keep the studio and the classroom clean; designated where to put her belongings in the studio; required her to make announcements; required her to ask students to come back and to provide feedback; required her to lend a hand if something needed to be taken care of, such as laundry or a sick student; required her to work the front desk occasionally and instructed her what to do when working the front desk, including how to handle the cash drawer; required her to arrive at the studio 30 minutes before class began; required her to turn on all the lights and set the heat; required her to change the laundry and clean the bathrooms if necessary; required her to check-in students prior to attending class; required her to welcome new students by name; required her to

make herself available after class for questions; required her to write postcards to all new students that were in her class; required her to check the fans, doors, lights, bathrooms, and laundry before leaving if she was the last class of the day; prohibited her from engaging in personal emails, phone calls, text messages, or social media during the 30 minutes before class; and required her to advise students if the studio had special pricing for first-time students [*Id.* at Page ID # 297-300].

Defendant Vasileff now owns a juice bar, where she spends most of her time, and she only teaches yoga classes at Hot Yoga Plus an average of one hour per week [Doc. 43-3 at Page ID # 197-98]. Before she purchased the juice bar, Defendant Vasileff was teaching an average of 13 to 15 hours of yoga classes per week at Hot Yoga Plus [*Id.* at Page ID # 198]. Defendant Vasileff has also taught yoga classes at Yoga Landing and the downtown Sports Barn gym [*Id.*]. Defendant Vasileff has been teaching classes at Yoga Landing for two to three years since the studio opened, and while she used to teach two to three hours a week, she now only teaches about an hour and a half per week at Yoga Landing [*Id.*]. Defendant Vasileff taught yoga classes from June 2013 to December 2013 at Sports Barn, and she only worked an hour per week when she was teaching yoga there [*Id.*]. Defendant Vasileff no longer teaches yoga at Sports Barn [*Id.*].

When Defendant Vasileff was working at Hot Yoga Plus, Ms. Blaire Foster, the manager of the studio, would set the class schedule for six-month periods of time [*Id.* at Page ID # 200]. Defendant Vasileff and the other teachers could put in requests for the hours and days of the week that they wanted to teach [*Id.* at Page ID # 200-01]. Ms. Foster would then set the schedule [*Id.* at Page ID # 201]. Defendant Vasileff had the option to choose not to teach classes that had been assigned to her on the schedule by getting a substitute teacher [*Id.* at Page ID # 200].

7

Defendant Vasileff could choose not to teach classes whenever she wanted by telling Ms. Foster not to schedule her for those dates [*Id.* at Page ID # 211].

Defendant Vasileff first met Plaintiff when Plaintiff taught as a substitute teacher for one of Defendant Vasileff's classes at Hot Yoga Plus, six months to a year prior to Plaintiff's August 2013 teacher training at Hot Yoga Plus [*Id.* at Page ID # 199]. Plaintiff was a substitute teacher for Defendant Vasileff's class so that the students could get to know Plaintiff [*Id.*]. Defendant Vasileff also took Plaintiff's class when she was a substitute for another teacher [*Id.*].

### 3. The Teacher Training and the Car Accident

Defendant Vasileff was asked by either Ms. Foster or Ms. Herring to assist Plaintiff with the teacher training she planned to conduct in Chattanooga at Hot Yoga Plus in August and September 2013 [*Id.* at Page ID # 202-03, 210]. Two other teachers at Hot Yoga Plus were also asked to be Plaintiff's assistant, but they chose not to accept [*Id.* at Page ID # 210]. Defendant Vasileff could have said no to being Plaintiff's assistant for the teacher training [*Id.*]. Defendant Vasileff was paid $2000 for being the teacher training assistant via a separate check from her regular class teaching pay [*Id.* at Page ID # 204].

Plaintiff conducted teacher training at Hot Yoga Plus in Chattanooga in Fall 2013, with the first weekend of the training taking place in August [Doc. 44-2 at Page ID # 302]. Defendant Vasileff assisted Plaintiff during the August teacher training, and she drove Plaintiff to and from a hotel and possibly to get lunch [*Id.* at Page ID # 302, 306]. Plaintiff conducted the second weekend of the teacher training in September, and Defendant Vasileff again assisted her during the teacher training class [*Id.* at Page ID # 304-05]. On September 6, 2013, after finishing the teacher training class for the day, Defendant Vasileff drove Plaintiff from the studio to stay with a Hot Yoga Plus student, Kristen Camden [*Id.* at Page ID # 307]. Defendant Vasileff had not

been to Ms. Camden's residence before and did not know where it was [*Id.* at Page ID # 307-08]. Plaintiff was using her cellphone to provide Defendant Vasileff with directions to Ms. Camden's residence [*Id.* at Page ID # 308].

During the drive, Defendant Vasileff noticed that when she put her foot on the brake, the steering wheel shook a little bit, and she told Plaintiff about it [*Id.*]. Defendant Vasileff then realized that the brakes had completely failed, and she told Plaintiff that they needed to jump out of the car [*Id.*]. Defendant Vasileff jumped out of the car, and Plaintiff exited the moving vehicle at some point after Defendant Vasileff had jumped out of the car. [*Id.*].

**B.     Disputed Facts**

The Yoga Defendants contend that Defendant Vasileff provided transportation to Plaintiff voluntarily but was not required to do so by Hot Yoga Plus, and they cite to Defendant Vasileff's affidavit in support of this [Doc. 43 at Page ID # 159 (citing Doc. 43-2 at Page ID # 195)]. The Yoga Defendants also cite to Defendant Vasileff's deposition testimony for their contention that she was never told by anyone other than Plaintiff to drive Plaintiff around in Chattanooga [Doc. 43 at Page ID # 161 (citing Doc. 43-3 at Page ID # 201)]. The Yoga Defendants contend that Defendant Vasileff first learned that she would be driving Plaintiff in the evening after the teacher training class in August was over [*Id.*].

Plaintiff contends that the manager of Hot Yoga Plus, Ms. Foster, told Defendant Vasileff that she would be driving Plaintiff around in Chattanooga as part of her role in the teaching training [Doc. 44 at Page ID # 278 (citing Doc. 44-4 at Page ID # 368)]. Plaintiff cites to her own deposition testimony, as well as an email dated August 8, 2013, from Ms. Foster responding to Plaintiff, which stated that Defendant Vasileff "will be on pickup and drop off duty!" [Doc. 44 at Page ID # 278 (citing Doc. 44-1 at Page ID # 290)].

## III. DISCUSSION

Plaintiff alleges claims against the Yoga Defendants under agency and *respondeat superior* theories of liability [Doc. 1 at Page ID # 3-4, ¶¶ 16 & 17]. Plaintiff claims that Defendant Vasileff was acting as the Yoga Defendants' employee or agent (whether actual or apparent) at the time of the car accident, and therefore the negligent acts and/or omissions of Defendant Vasileff are imputed by law to the Yoga Defendants. The Yoga Defendants, in their motion for summary judgment, argue that reasonable minds cannot differ in concluding, based on the undisputed facts, that the relationship between Defendant Vasileff and the Yoga Defendants is that of an independent contractor and studio, not an employee/employer or agent/principal relationship [Doc. 43 at Page ID # 154-55]. Plaintiff, meanwhile, contends in her response that there is a disputed issue of material fact regarding the relationship between Defendant Vasileff and the Yoga Defendants, and Plaintiff contends that the facts establish that the relationship was that of an employee and employer.

Under the doctrine of *respondeat superior*, an employer is "vicariously liable for torts committed by its employee when that employee was acting within the scope of his employment." *Russell v. City of Memphis*, 106 S.W.3d 655, 657 (Tenn. Ct. App. 2002). Where, however, a worker is an independent contractor as opposed to an employee, the principal is generally not held vicariously liable for the negligent acts of the independent contractor. *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 394 (Tenn. 2002); *see also*, *Wilson v. Thompson Const. Co.*, 86 S.W.3d 536 (Tenn. Ct. App. 2001). The tort liability of a principal for the actions of his agent is the same as the liability of an employer for the actions of his employee. *Alverson v. Am. Nat. Ins. Co.*, 30 F. App'x 491, 495-96 (6th Cir. 2002) (citing *Sain v. ARA Mfg. Co.*, 660 S.W.2d 499, 500-01 (Tenn. Ct. App. 1983).

This Court has previously addressed the issue of whether a worker is properly categorized as an employee or an independent contractor in Tennessee. *See Pope v. Hoelcher*, No. 304CV388, 2005 WL 1320242, at *4 (E.D. Tenn. May 26, 2005).

> An independent contractor is one who contracts to perform a service or do a "piece of work" by his own methods and without control or direction by his employer, except as to the result to be achieved. *Cromwell General Contractor, Inc. v. Lytle,* 222 Tenn. 633, 638, 439 S.W.2d 598, 601 (1969). When the facts of a given case are undisputed, characterization of whether a person is an employee or an independent contractor becomes a question of law. *Id.,* 222 Tenn. at 638, 439 S.W.2d at 600. However, where the evidence is conflicting and more than one inference can be drawn therefrom, the question as to whether a person is an employee or an independent contractor is one of fact. *Mayberry v. Bon Air Chemical,* 160 Tenn. 459, 26 S.W.2d 148, 150 (1930).
>
> The Tennessee Supreme Court has developed certain tests as aids in determining whether a particular work relationship is that of employer-employee or that of independent contractor: (1) the right to control the conduct of the work; (2) the right of termination; (3) the method of payment between the alleged employer and employee; (4) whether or not the alleged employee furnishes his own helpers; and (5) whether or not the alleged employee furnishes his own tools. *Cromwell General Contractor, Inc. v. Lytle,* 222 Tenn. 633, 638, 439 S.W.2d 598, 601 (1969).

*Pope*, 2005 WL 1320242, at *4.

The primary test for determining whether an individual is an employee or independent contractor is "the right to control." *Maisers v. Arrow Transfer & Storage Co.,* 639 S.W.2d 654, 656 (Tenn. 1982) (citations and internal quotation marks omitted) ("Although no indicia is infallible or entirely indicative, it has generally been recognized by this court that the primary test for determining claimant's status as employee or independent contractor is the right to control."). The right of control is also the test for determining whether an individual was an agent of the principal. *Sodexho Management, Inc. v. Johnson*, 174 S.W.3d 174, 178 (Tenn. Ct.

App. 2004) ("The test is whether the principal has a right to control the conduct of the agent with respect to matters entrusted to the agent.").

The more control the principal or employer has over the details and methods of the worker's labor, the more likely it is that an agent or employee status exists. *Hibbs v. Hernandez*, No. 1:04-CV-204, 2006 WL 389857, at *4 (E.D. Tenn. Feb. 17, 2006) (citing *Wright v. Knox Vinyl & Aluminum Co., Inc.*, 779 S.W.2d 371, 373 (Tenn. 1989)); *Sodexho Management, Inc.*, 174 S.W.3d at 178 (quoting *United States v. Boyd*, 363 S.W.2d 193, 197 (Tenn. 1962)); *see also Ascolese v. Misco, Inc.*, No. 88-283-II, 1989 WL 25588, at *3 (Tenn. Ct. App. Mar. 22, 1989). "Generally the distinction between the relation of principal and agent and employer and independent contractor is based on the extent of the control exercised over the employee in the performance of his work, he being an independent contractor if the will of the employer is represented only by the result, but an agent where the employer's will is represented by the means as well as the result." *Boyd*, 363 S.W.2d at 197. However, "a party to a contract can exercise direction and control over the results of the work without destroying the independence of the contract or creating an employer-employee relationship." *Maisers*, 639 S.W.2d at 656.

Here, in determining whether Defendant Vasileff was an agent, employee, or independent contractor for the Yoga Defendants, the Court must consider the Yoga Defendants' control over Defendant Vasileff as the primary test. Facts are present that support different conclusions. On the one hand, that Defendant Vasileff did not have taxes withheld from her pay, received a 1099 tax form, and did not receive vacation or sick days, workers' compensation insurance, health insurance, a cell phone, or an automobile from her employer are all facts which support the existence of an independent contractor relationship. That Defendant Vasileff was paid a set fee for teaching a class, rather than a salary or hourly rate, also supports an independent contractor

relationship. That Defendant Vasileff was permitted to teach yoga classes at other studios supports an independent contractor relationship. That Defendant Vasileff could choose the times and days she wanted to be scheduled to teach class supports an independent contractor relationship.

On the other hand, some of Hot Yoga Plus's requirements and procedures, which Defendant Vasileff had to follow when working at the studio, do not support an independent contractor relationship. Hot Yoga Plus's requirements that Defendant Vasileff clean the studio and classroom, make announcements to students and ask them to return, help with laundry and sick students, work the front desk when necessary, arrive 30 minutes before a scheduled class, turn on all the lights and set the heat, clean the bathrooms if necessary, check-in students before allowing them to attend class, welcome students by name, make herself available for questions after class, abstain from all personal conversations during the 30 minutes before a class, and close up the studio at the end of the day all show that the Yoga Defendants had some control over the methods of Defendant Vasileff's work, which does not support an independent contractor relationship.

Defendant Vasileff's role at Hot Yoga Plus as a result of her agreement to the request of Ms. Foster or Ms. Herring to act as the assistant during teacher training must also be considered. Instead of merely teaching classes at the times she chose, Defendant Vasileff had to be present during the longer weekend teacher training classes. Instead of Defendant Vasileff choosing what and how to teach, Plaintiff chose how to teach the teacher training class, and Defendant Vasileff had to assist Plaintiff with whatever she needed. Defendant Vasileff's pay also changed, as she received approximately $2000 for being the teacher training assistant.

Whether Defendant Vasileff was told by Hot Yoga Plus to be on pickup and drop off duty for Plaintiff while she was in Chattanooga, or whether Defendant Vasileff did so on a purely voluntary basis, is in dispute. If Defendant Vasileff was expected by the Yoga Defendants to drive Plaintiff as part of her role as the assistant, this would be further evidence of control over Defendant Vasileff by the Yoga Defendants. Thus, whether Defendant Vasileff was told by Hot Yoga Plus (whether by Ms. Foster, the manager, or Ms. Herring, the owner) to transport Plaintiff while she was in Chattanooga for the teacher training events is a proper consideration for the fact finder.

The issue of whether Defendant Vasileff drove Plaintiff voluntarily or at the direction of Hot Yoga Plus appears to be material and genuinely in dispute. As noted earlier, where the evidence is conflicting, and more than one inference can be drawn therefrom, the question as to whether a person is an employee or agent or an independent contractor is one of fact. *Mayberry v. Bon Air Chemical,* 26 S.W.2d 148, 150 (1930). Viewing the facts in the current record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party, the Court cannot make a determination as a matter of law that Defendant Vasileff was not acting

as an employee or an agent of the Yoga Defendants at the relevant time.[1] Accordingly, summary judgment must be denied.

## IV. CONCLUSION

For the foregoing reasons, the Yoga Defendants' motion for summary judgment [Doc. 43] is **DENIED**. As noted in the prior Amended Scheduling Order [Doc. 42], a scheduling conference will be held on **April 6, 2015 at 11:00** a.m. [Eastern Time].

SO ORDERED.

ENTER:

                                              s/ *Susan K. Lee*
                                              SUSAN K. LEE
                                              UNITED STATES MAGISTRATE JUDGE

---

[1] The Yoga Defendants also claim that "[i]n February of 2013, prior to the accident in September of 2013, Ms. Vasileff signed an independent contractor relationship agreement with Hot Yoga Plus." [Doc. 43 at Page ID # 163]. The Yoga Defendants did not provide a citation to the record supporting this claim, and no agreement was attached as an exhibit to the motion. "A district court is not required to search the entire record to establish that it is bereft of a genuine issue of material fact," and "judges are not like pigs, hunting for truffles that might be buried in the record." *Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (citations, internal quotation marks, and alteration omitted); *see also Wimbush v. Wyeth*, 619 F.3d 632, 638 n.4 (6th Cir. 2010). Even if the Yoga Defendants had included citation to materials in the record supporting this statement, however, an independent contractor relationship agreement would not change the result reached herein. *See Nidiffer v. Clinchfield R. Co.*, 600 S.W.2d 242, 245 (Tenn. Ct. App. 1980) ("It is not essential to any agency relationship that the parties understand, agree, or contract that their acts are those of principal and agent; rather, whether an agency exists is determined by the actual relationship and deeds of the parties, whether they understood there was an agency or not.") (citations omitted).

15